# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**LYDIA J. STEPP,**

    **Plaintiff,**

                            **Civil Action 2:18-cv-00641**
                            **Judge Sarah D. Morrison**
    **v.**                        **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Lydia J. Stepp ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 9). For the following reasons, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I. BACKGROUND

Plaintiff applied for Supplemental Security Income benefits on March 27, 2015. (R. at 193–98.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 144–55.) Upon request, a hearing was held on April 26, 2017 in which Plaintiff, represented by counsel,

appeared and testified. (R. at 39–79.) A vocational expert also appeared and testified at the hearing. (R. at 71–77.) On November 7, 2017, Administrative Law Judge Timothy Gates ("the ALJ") issued a decision finding that Plaintiff was not disabled at any time after February 12, 2015, the alleged onset date. (R. at 9–35.) On May 11, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 3.)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified that her boyfriend is Roy Ankrom and she lives with him and his mother, Norma Ankrom. (R. at 48, 59.) Plaintiff stated that Norma does the housework, cooking, and cleaning. (R. at 57.) Plaintiff further stated that her typical day involves waking up, taking her medications, taking a shower, taking the dog outside, and then sitting in front of the television for the rest of the day. (R. at 58–59.) She also stated that she has never had a driver's license. (R. at 62.) Plaintiff testified that the highest grade level she completed in school was the ninth grade and she did not try to get her GED. (R. at 48.) Plaintiff stated that she does not do any reading and that her reading level during school was a second grade level. (R. at 48—49.) Plaintiff further stated that she was in special education classes for all school subjects. (R. at 49.) Plaintiff testified that she has never worked a day in her life because she has "been sick all [her] life and [has] been getting SSI" since she was fifteen-years-old. (*Id.*)

Plaintiff stated that at age nineteen she had surgery because her gallbladder and appendix ruptured. (R. at 49–50.) Plaintiff testified that her wound from that surgery "came back open." (R. at 50.) Plaintiff further testified she is currently being treated for the wound. (*Id.*) Plaintiff stated that the wound affects her "if [she tries] to get stuff over the top of [her] head or

something, it stretches it and it pulls the skin more open and it starts bleeding." (R. at 51–52.) Plaintiff also stated that if she lifts more than five or six pounds it is "too heavy" and "stretches her wound." (R. at 54–55.) Plaintiff later testified that there are two holes that remain open in her stomach and puss will come out of them. (R. at 67.)

Plaintiff also testified that her medication makes her "sleep all the time." (R. at 52.) She further testified that she has been using an inhaler for about two years and that her breathing problems get worse when she walks. (*Id.*) Plaintiff stated that she has had problems with her knees that affect walking and sitting. (*Id.*) Additionally, Plaintiff stated that she has back pain that "goes down to [her] right knee . . . clear down [her] leg and [her] hip." (R. at 53.) Plaintiff also testified that she has schizophrenia and does not like to be around people or be in elevators. (*Id.*) Plaintiff further testified that she gets migraine headaches three to four times a month. (R. at 68.)

Plaintiff testified that she has six living children and sixteen grandchildren, with the sixteenth grandchild still in utero at the time of the hearing. (R. at 70.) Plaintiff further testified the fifteenth grandchild was eight months old at the time of the hearing and she could not hold him because he was too heavy. (R. at 71.)

### B. Vocational Expert Testimony

Jerry O'Chesky testified as the vocational expert ("VE") at the April 2017 hearing. (R. at 41.) The ALJ asked the VE to assume a hypothetical individual with the same age and education as Plaintiff who could occasionally climb ramps and stairs; but never climb ladders, ropes or scaffolds; who could occasionally balance, kneel, crouch, and crawl; who could frequently stoop; who could not have any exposure to workplace hazards such as unprotected heights or moving mechanical parts; who is limited to performing simple, routine tasks; who can have occasional

3

interaction with supervisors and coworkers but no interaction with the general public; who can adapt to routine changes in the workplace; and must have a workplace where there is only moderate time and production demands. (R. at 72.) Assuming those limitations, the VE testified that the individual could perform light, unskilled work such as a cleaner at the light, unskilled level; a light, unskilled hand packer; and a light, unskilled inspector. (R. at 73.)

The ALJ then asked the VE to assume a hypothetical individual with the same age and education as Plaintiff who is limited to work at a sedentary exertional level; who can stand and walk up to two hours in an eight-hour workday; who can sit for up to six hours in an eight-hour workday; who can lift and carry up to ten pounds occasionally and less than ten pounds frequently; with the same postural, environmental, and mental limitations as the previous hypothetical. (*Id.*) Assuming those limitations, the VE testified that the individual could perform work in sedentary, unskilled occupations such as an assembler at the sedentary, unskilled level; sorter at the sedentary, unskilled level; or inspector at the sedentary, unskilled level. (R. at 74.)

The ALJ then asked the VE to assume a hypothetical individual with the same age and education as Plaintiff and the same limitations as in either the first or second hypothetical, but in addition the individual would be absent from work two days per month. (*Id.*) Assuming those limitations, the VE testified that the individual could not work because "with that rate of absenteeism . . . most employers are eventually going to terminate that worker." (R. at 75.)

The VE next testified that assuming a hypothetical individual with the Plaintiff's age and education who in an eight-hour workday could sit for an hour and a half to two hours and would only occasionally be able to perform activities within a schedule, this individual would not be able to do competitive work. (R. at 75.) The VE further testified that assuming the first or

4

second hypothetical, but adding limitations that the individual would not be able to do any overhead reaching, would not be able to extend their arms forward, and would have to sit in a position that would cause them to either sit back into a chair or in another position to take pressure off their abdomen, then this individual would not be able to perform any of the jobs provided for the first or second hypotheticals. (R. at 75–76.)

### III. RELEVANT RECORD EVIDENCE

Norma Ankrom provided a statement regarding Plaintiff on April 20, 2017:

> My name is Norma Ankrom and [I am] the home owner where Lydia Stepp is now living. Lydia's health is getting worse all the time. On Easter Sunday her son Bobby came to our house with his 2 children[.] His little Girl wanted to sit on grandma's lap. Lydia couldn't let her[.] She is three years old, but Lydia couldn't hold her[] as it is too painful on her stomach; where she had surgery last October.
>
> The wound is still open in a couple of places. Lydia has a hard time reaching up into the bathroom and kitchen cupbords [sic] as it pulls on her stomach. The other child Bobby brought to the house is a little boy who weights [sic] about 17 pounds. Lydia cried when they left because she wanted to hold the baby; but the pain was to [sic] much on her back. When we go shopping; Lydia is always asking me to get something for her. If she trys [sic] to get it for [herself], she has pains shooting up her legs and into her back.
>
> Lydia can't be out an[d] about for very long; as her knees give out and she does[n]'t want to fall. Lydia fell in the house about three weeks ago[] and [I] couldn't get her up. I called a neighbor man to help get her up off of the floor.
>
> I am the one who makes sure she takes medication. She goes to therpy [sic] for the paines [sic] in her back and legs[.] When ever [sic] she leaves the house I make sure she takes her cain [sic]. I also make sure she has pain medication with her.

(R. at 386.)

Roy Ankrom also provided a statement regarding Plaintiff on April 21, 2017:

> I am Roy Ankrom and a friend to Lydia Stepp. She is living with my mother and me[] in our home. The only help she gets is food stamps and Medical Help.
>
> When I first brought her to my house she was being treated for Hepatitis B; and Cirrohosis [sic] of the Liver. At that time she was on the list for a liver transplant,

5

> That was about 4 or 5 years ago. Sence [sic] that time her health has gone down hill [sic].
>
> When she gets her food stamps; I take her to the grocery store to get what she wants. I am with her to bend down or to reach up to get something she can't. After about 20 to 25 minutes she has to go back to the car to rest her back and her legs. The pain is so bad she is in tears. If she is having a good day, she likes to look around in seconed [sic] hand stores; but it never last[s] very long. I will find her sitting down some where [sic], because of the pain in her back and legs. If her legs give out, she falls down. At this time I have to get her in the car to come home[.] She sits a lot; but at 20 to 25 minutes at a time. There is a limit to what she can lift. [N]othing over 5 to 10 pounds.
>
> I also help Lydia keep track of all her medicines. I want to help her any way I can, when I can.

(R. at 392.)

## IV. ADMINISTRATIVE DECISION

On November 2, 2017, the ALJ issued his decision. (R. at 9–35.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 12, 2015, the alleged onset date. (R. at 14.) The ALJ found that

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Plaintiff has the following severe impairments: obesity; chronic liver disease; hyperlipidemia; mild degenerative disc disease of the lumbar spine; osteoarthritis of the right knee; a depressive disorder; borderline intellectual functioning; and generalized anxiety disorder. (R. at 15.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except her ability to perform the full range of light exertion work is compromised by postural limitations that prevent her from climbing ladders/ropes/scaffolds and restrict her to performing the following on no more than an occasional basis during an eight-hour workday: climbing stairs/ramps, balance, kneel, crouch and crawl. The [Plaintiff] is able to perform stooping tasks on a frequent basis during an eight-hour day. The [Plaintiff] has environmental limitations that prevent her from working around dangerous hazards such as unprotected heights or moving machinery. Due to her mental impairments, the [Plaintiff] is limited to performing simple routine tasks in an environment with no more than moderate pace/production demands, which does not require contact with the public, and which requires no more than occasional interactions with supervisors and/or coworkers.

(R. at 21–22.)

The ALJ concluded that Plaintiff did not have any past relevant work. (R. at 27.) The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 28.) He therefore concluded that Plaintiff was not disabled under the Social Security Act from February 12, 2015, through the date of the administrative decision. (R. at 29.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forth two assignments of error. First, Plaintiff asserts that the ALJ improperly rejected opinion statements from two third-parties contained in the record. (ECF No. 13, at pg. 1.) Second, Plaintiff asserts that the ALJ's finding that her abdominal wound was a non-severe impairment is not supported by substantial evidence. (*Id.*) The Undersigned agrees with Plaintiff's first contention, that the ALJ improperly rejected opinion statements from two third-parties contained in the record.[2]

"As to third-party statements made by Plaintiff's family and friends, Section 404.1513(d) of Title 20 of the Code of Federal Regulations provides that other sources may provide evidence to show the severity of a claimant's impairment and how it impacts a claimant's ability to work." *Allums v. Colvin*, No. 1:14-cv-2429, 2015 WL 9282334, at *21 (N.D. Ohio Nov. 25, 2015), *report and recommendation adopted*, No. 1:14-cv-2429, 2015 WL 9258507 (N.D. Ohio Dec. 17, 2015) (citing 20 C.F.R. § 404.1513(d)). "'Other sources' include non-medical sources such as spouses, parents, other care-givers, siblings, relatives, friends, neighbors and clergy." *Id.* (citing 20 C.F.R. § 404.1513(d)). SSR 06–3p[3] provides that an ALJ should consider evidence from non-medical sources who have not seen a claimant in a professional capacity and the ALJ may consider "such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that support or refute the evidence." 2006 WL 2329939, at *6 (Aug. 9, 2006). However, the United States Court of Appeals for the Sixth

---

[2] This finding obviates the need for in-depth analysis of Plaintiff's remaining assignment of error. The Court, however, encourages the Commissioner to address this contention if the Court ultimately remands the case.

[3] Effective March 27, 2017, SSR 06-03p was rescinded. 82 Fed. Reg. 15263-01 (March 17, 2017). However, because Plaintiff filed her claims prior to the effective date, SSR 06-03p still applies in the instant action.

9

Circuit has held that "an ALJ can consider every piece of evidence without addressing [all the evidence] in his opinion." *Kornecky v. Comm'r of Soc. Sec,* 167 F. App'x 496, 507–08 (6th Cir. 2006). SSR 06-03p provides as follows:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from [third parties], or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

2006 WL 2329939 at *6.

Under the regulations, Norma Ankrom and Roy Ankrom's statements constitute "other source" evidence. As described in SSR 06-03p, "other source" evidence includes health care providers who are not "acceptable medical sources," such as nurse practitioners, physicians assistants, licensed clinical social workers, and therapists. 2006 WL 2329939 at *2. It also includes, as is the case here, "non-medical sources" such as school teachers, counselors, social welfare agency personnel, family, friends, neighbors, clergy, and employers. *Id.* The Commissioner must consider "other source" evidence but may do so only for the purpose of determining the severity of a claimant's impairments. *Id.* Unlike "acceptable medical source" evidence, it cannot be used to establish the existence of a medically determinable impairment. *Id.*

Further, the Ruling points out that there are two kinds of "non-medical source" evidence. First, there is the "non-medical source" who has seen the claimant in a professional capacity, such as a teacher, counselor, or social worker. *Id.* at *5–6. As described in the Ruling, when evaluating the first kind of "non-medical source" evidence,

> it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

10

*Id.* at *5.

The second kind of "non-medical source" is one who has not seen the claimant in a professional capacity in connection with his or her impairments. As described in the Ruling, this kind of "non-medical source" evidence includes a claimant's "spouse, parents, friends, and neighbors." *Id.* When evaluating the second kind of "non-medical source" evidence,

> it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.

*Id.*

Here, Plaintiff specifically asserts that the ALJ improperly gave little weight to the statements of Norma Ankrom and Roy Ankrom "based on only one expressed basis, that they are potentially biased." (ECF No. 13, at pg. 8.) The ALJ found the following regarding the two statements:

> Due to potential bias, the undersigned give[s] little weight to the opinion statements from Roy Ankrom (the claimant's boyfriend) and his mother, Norma Ankrom (who owns the home where the claimant resides).

(R. at 27.) The ALJ, therefore, rejected the two statements solely because they were made by people who may potentially be biased in Plaintiff's favor. This reason is insufficient. "[T]he social security regulations and rulings specifically allow for the consideration of such statements to show the severity of a claimant's impairments and the impact of the severity of those impairments upon a claimant's ability to work." *Allums*, 2015 WL 9282334 at *21 (citing *Teel v. Comm'r of Soc. Sec.*, No. 1:10-cv-613, 2011 WL 6256952, at *20 n.5 (S.D. Ohio August 22, 2011)). An ALJ's "outright rejection of such statements because of undue bias would render the social security rulings and regulations superfluous." *Id.* (citing 20 C.F.R. § 416.913 and SSR 06-03p).

The Commissioner offers to explain the ALJ's reasoning for rejecting the opinions. Defendant extensively reviews the ALJ's discussion of the medical records and argues that "[a]lthough the ALJ did not discuss the opinions in detail, he indirectly attacked them when evaluating the medical evidence. . . . Thus, the ALJ indirectly explained why he was not crediting Ms. Ankrom's complaints . . . ." (Def's Mem. in Opp., at p. 9.) She makes the same point of Mr. Ankrom's statements. (Id. at 9-11.) The Commissioner's attempt to explain the omissions made by the ALJ would result in the Court "engaging in *post hoc* rationalization, which is prohibited." *Miller v. Comm'r of Soc. Sec.*, No. 1:13–CV–1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014) (remanding action where, *inter alia*, "the Court is unable to ascertain the ALJ's intent" because the ALJ "did not discuss her decision to omit the limitation" contained in a medical opinion to which the ALJ attributed "full weight"); *see also* S.S.R. 96-8p; *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.' ") (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991) ); *Garrett v. Berryhill*, No. 3:17-cv-00049, 2018 WL 1521763, at *7 (S.D. Ohio Mar. 28, 2018) (remanding where "the Commissioner improperly relies on *post hoc* rationalizations to substitute for the ALJ's deficient consideration of Plaintiff's Crohn's disease before May 31, 2014"); *Collins v. Comm'r of Soc. Sec.,* Case No. 2:17-cv-1028, 2019 WL 1512539, at *6 (S.D. Ohio, 2019) (collecting cases).

Here, the ALJ cited no evidence in support of the alleged potential bias. He did not indicate that he considered any factors set forth in SSR 06-03 for the evaluation of "other non-medical opinions." Accordingly, the Undersigned finds that the ALJ improperly rejected the opinion statements from Norma Ankrom and Roy Ankrom.

## VII.  CONCLUSION

Due to the error outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g).  Accordingly, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## **PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: July 26, 2019**                     **/s/** *Elizabeth A. Preston Deavers*
                                            **ELIZABETH A. PRESTON DEAVERS**
                                            **CHIEF UNITED STATES MAGISTRATE JUDGE**